CV 15-0147

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

IRIZARRY, J.

GO, M.J.

2015 JAN 12 PM 2:51

FILED

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MENG WANG and JANE DOES 1-100, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

DORIS INC., DORIS INTERNATIONAL INC., GILDAN ACTIVEWEAR INC. and GILDAN ACTIVEWEAR USA INC.

Defendants,

Case No.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiffs, MENG WANG and JANE DOE, on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class Action Complaint against Defendant, DORIS INC. (hereinafter, "DORIS"), DORIS INTERNATIONAL INC. (hereinafter, "DORIS INTERNATIONAL"), GILDAN ACTIVEWEAR INC. (hereinafter, "GILDAN ACTIVEWEAR") and GILDAN ACTIVEWEAR USA INC. (hereinafter, "GILDAN ACTIVEWEAR USA") (collectively, "Defendants") and state as follows based upon their own personal knowledge and the investigation of their counsel:

## NATURE OF THE ACTION

1. This is a class action seeking redress for deceptive and otherwise improper business practices that Defendants engage in with respect to their marketing, advertising and promotion of their Kushyfoot® socks, tights and hosiery with "zigzag," "massaging" or "3-dimensional massaging" soles. Plaintiff Meng Wang purchased for her personal use the Shaping Tights (hereinafter, the "Shaping Tights Product") and Sheer Knee High socks (hereinafter, the "Sheer Knee High Product") (collectively, the "Purchased Products"). The Purchased Products are representative of the entire line of Products defined below. Products are produced in numerous colors, lengths, sizes, and quantities as marketed on Defendants' website. Through an extensive, widespread, comprehensive and uniform marketing campaign, Defendants have engaged in, and continue to engage in, unconscionable business practices and deceptive acts in connection with the marketing and sale of the Products, which has injured Plaintiffs and the putative class.

2. Defendants sold Plaintiffs and Class members, and continue to sell consumers the following socks, tights, and hosiery with "zigzag," "massaging" or "3-dimensional massaging" soles:

a) Sheer Knee High Socks
b) Sheer Anklet Socks
c) Fishnet & Flat Knit Opaque Knee High Socks
d) Rib & Flat Knit Opaque Knee High Socks
e) Flat Knit Opaque Knee High Socks
f) Microfiber Crew Socks
g) Light Support Knee High Socks
h) Shaping Tights
i) Opaque Tights
j) Rib Tights
k) Fishnet Tights

(Collectively, the "Products.")

3. Defendants intend to create customer confusion by using unreliable and misleading language to describe their Products. Defendants have led Plaintiffs and reasonable customers to believe that the Products' "exclusive zigzag massaging sole" will improve their overall psychological and bodily comfort and well-being simply by wearing their Products compared to non-Kushyfoot® socks, tights or hosiery.

4. Plaintiffs and the members of the proposed Class reviewed Defendants' misleading marketing and Product packaging, reasonably relied in substantial part on the labels on the packaging and the Products' website and were thereby deceived in deciding to purchase the Products for a premium price.

5. Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons nationwide, who, from the applicable limitations period up to and including the present (the "Class Period"), purchased for consumption and not resale, the Products.

6. Defendants' actions constitute violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349, as well those similar deceptive and unfair practices and/or consumer protection laws in other states. Defendants violated statutes enacted in each of the fifty states and the District of Columbia, which are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

*a.* Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
*b.* Alaska Unfair Trade Practices and Consumer Protection Act, Ak_ Code § 45.50.471, *et seq.;*
*c.* Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
*d.* Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
*e.* California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
*f.* Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
g. Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
*h.* Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
i. District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*

*j.* Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
*k.* Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
*l.* Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq.*, and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
*m.* Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
*n.* Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*
*o.* Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*
*p.* Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*
*q.* Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*
*r.* Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*
*s.* Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*
*t.* Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*
*u.* Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*
*v.* Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;
*w.* Michigan Consumer Protection Act, § § 445.901, *et seq.;*
*x.* Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*
*y.* Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*
*z.* Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*
*aa.* Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*
*bb.* Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*
*cc.* Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*
*dd.* New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*
*ee.* New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*
*ff.* New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq. ;*
*gg.* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq. ;*
*hh.* North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*
*ii.* North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*
*jj.* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*
*kk.* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*
*ll.* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*
*mm.* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*
*nn.* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*
*oo.* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq. ;*
*pp.* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*
*qq.* Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*
*rr.* Texas Stat. Ann. §§ 17.41, *et seq.*, Texas Deceptive Trade Practices Act
*ss.* Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*
*tt.* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*
*uu.* Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*

*vv.* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*
*ww.* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*
*xx.* Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*
*yy.* Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed class consists of over 100 class members; (ii) at least some of the proposed class members have a different citizenship from Defendant; and (iii) the amount in controversy exceeds the sum of value of $5,000,000.00, excluding interest and costs.

8. The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

9. The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

10. Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

11. This court has personal jurisdiction over Defendants because their Product is advertised, marketed, distributed, and sold throughout New York State; Defendants engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; Defendant are authorized to do business in New York State; and Defendants have sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, rendering the exercise of jurisdiction by the Court

permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

12. Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District and Defendants are subject to personal jurisdiction in this District. Plaintiffs purchased Defendants' Products in Queens County.

## PARTIES

13. Plaintiff MENG WANG is a citizen of the State of New York and resides in Queens County. Within the twelve month period prior to filing, Plaintiff WANG was exposed to Defendants' tension relief and massage claims by reading the packaging of the Products at a Duane Reade store located in the Elmhurst area of Queens and browsing the Defendants' Kushyfoot® official website. In reliance on the tension relief and massage claims, Plaintiff WANG purchased the Products for personal consumption. The retail purchase price was approximately $7.64 (or more) for the Shaping Tights Product in black and approximately $6.99 (or more) for the Sheer Knee High Product in nude. Plaintiff used the Products as directed for approximately a week, but did not observe any tension relief or additional support from the "zigzag" or "massaging" soles. As a result of such deceptive language used by the Defendants, Plaintiff expected her feet to feel more comfortable in the Kushyfoot® brand Products than in her regular tights and socks without "zigzag" or "massaging" soles. Therefore, Plaintiff WANG suffered injury in fact. Had Plaintiff WANG known the truth about Defendant's misrepresentations and omissions, she would not have purchased the premium priced Products but would have purchased less expensive sock, tights and hosiery products.

14. Plaintiff JANE DOE is, and at all relevant times hereto has been a citizen of the state of New York. Plaintiff JANE DOE has purchased the Products for personal consumption within the State of New York. Plaintiff JANE DOE purchased the Products at a premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein.

15. Defendant DORIS INC. is a corporation organized under the laws of Montreal, Quebec, with its headquarters at 3701 rue Jarry E, Montreal (Quebec) H1Z2G1, Canada and an address for service of process at Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

16. Defendant DORIS INTERNATIONAL INC. is a corporation organized under the laws of Montreal, Quebec, with its headquarters at 3701 rue Jarry E, Montreal (Quebec) H1Z2G1, Canada. Defendant also has an office in the United States located at 434 North Laurel Avenue Los Angeles, CA 90048 and an address for service of process at Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

17. Defendant GILDAN ACTIVEWEAR INC. is a corporation organized under the laws of Montreal, with its principal place of business located at 600 de Maisonneuve Blvd. West, 33rd Floor, Montreal, QC H3A 3J2, Canada with an address for service of process in the United States at Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware, 19808.

18. Defendant GILDAN ACTIVEWEAR USA INC. is a corporation organized under the laws of Delaware with an address for service of process in the United States at Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware, 19808.

19. Defendants DORIS INC., DORIS INTERNATIONAL INC., GILDAN ACTIVEWEAR, and GILDAN ACTIVEWEAR USA INC. own the trademark for Kushyfoot® that appears on the Products.

## FACTUAL ALLEGATIONS

**Defendants**

20. Defendants develop and manufacture sock, tights and hosiery products for consumers and professional markets. According to the official Kushyfoot® website, http://www.kushyfoot.com, the Defendants provide Products such as "flats to go, foot covers, toe covers, trouser socks, knee highs, athletic socks, tights," throughout the United States through a network of suppliers.

21. Defendants manufacture, market and sell the Kushyfoot® socks, tights and hosiery with "zigzag" or "massaging" soles, including the Shaping Tights Product and the Sheer Knee High Product.

22. The Kushyfoot® Products are sold at convenience stores and supermarket chains across New York City, such as Duane Reade and Walgreen's.

**Kushyfoot® Socks, Tights and Hosiery**

23. Defendants manufacture, market and sell Kushyfoot® Products, a line of socks, tights and hosiery "that integrate[s] a patented massaging cushion designed by Reflexology experts," with "zigzag" or "massaging" soles, including the Shaping Tights Product and Sheer Knee High Product. The complete list of Products with "zigzag" or "massaging" soles is listed below:

| **Product Type:** | **Product Name:** |
|---|---|
| Knee Highs | Sheer Knee Highs* |
| | Sheer Anklet |
| | Fishnet & Flat Knit Opaque Knee Highs |
| | Rib & Flat Knit Opaque Knee Highs |

| | |
|---|---|
| | Flat Knit Opaque Knee Highs |
| | Microfiber Crew |
| | Light Support Knee High |
| Tights | Shaping Tights* |
| | Opaque Tights |
| | Rib Tights |
| | Fishnet Tights |

(*) The Products marked with asterisks are the Purchased Products.

24. The Shaping Tights Product in black retails for approximately $7.49 (or more) and the Sheer Knee High Product in nude retails for approximately $6.99 (or more). Photos of the Products and packaging are shown below:




For all the latest news
and products, visit us at
kushyfoot.com
628159 17046 9
12205
BLACK
MEDIUM
87% NYLON
13% ELASTANE
MADE IN CANADA
Your secret to great curves!
Shaping tights are designed with a firm shaper
that tames your tummy, hips and thighs.
60
DENIER
Control Top
Massaging Sole
Opaque Leg
Care instructions: Hand wash separately. Do not bleach. Drip dry.
SMALL
PEQUEÑO
HT 4'10"-5'6"
WT 85-135lbs
MEDIUM
MEDIANO
HT 5'0"-5'8"
WT 115-165lbs
LARGE
GRANDE
HT 5'2"-6'1"
WT 135-190lbs
PLUS
X-GRANDE
HT 5'4"-6'1"
WT 185-250lbs
Trade-marks of Doris Inc. used under license by Doris International Inc.
Doris International Inc. P.O. Box 516 Champlain, NY 12919
Made in Canada


LARGE/PLUS
ONE PAIR
SHEER KNEE HIGHS
MASSAGES YOUR FEET WITH EVERY STEP®
Graduated Compression
LYCRA


The Kushyfoot® padded sole massages your feet to relieve tension & fatigue, making your whole body feel refreshed!
Instructions:
Pull knee highs on, walk around and allow your feet to be pampered.
6 28159 10277 4
3417
NUDE
LARGE/PLUS
MADE IN CANADA
LARGE/PLUS SIZE
WASHING INSTRUCTIONS
HAND WASH SEPARATELY
DO NOT BLEACH, DRIP DRY
P.O. Box 510
USA
# KLKHA

Defendants have consistently conveyed the very specific message to consumers throughout the United States, including New York, that the Products immediately provide massaging comfort to the consumer because of their built-in zigzag pattern "massaging" soles. Plaintiffs purchased the Products assuming that the Defendants' claims about the efficacy of the Products are truthful and accurate. In reality, the Products feel no different than regular hosiery products and do not merit any pricing premium.

25. Defendants' misleading marketing campaign begins with their bombardment of the word "massage" on their Products' packaging - the word appears twice on the front of the packaging of the Shaping Tights Product alone. The same massage claims on the Sheer Knee High socks Product are buttressed by the instructions on the back of the packaging, encouraging the consumer to "Pull knee highs on, walk around and allow your feet to be pampered." Defendants' deceptive product description and slogan, "Massages your feet with every step®" informs the reasonable consumer that the Products will actually massage their feet as they move about during the day. The description, printed immediately below the product name on the Shaping Tights Product and the back of the packaging on the Sheer High Socks Product, is therefore designed to give the false impression that the "zigzag" and "massaging" soles in the Products have a physically, and possibly psychologically, therapeutic purpose.

26. The takeaway message from these representations is that consumers will experience the benefit of psychological and bodily comfort and wellbeing. To strengthen their "massaging" sole claims, the Defendants' Facebook page states their mission as the following:

> ***Our mission is to make you feel good while looking great. By creating socks, hosiery and on-the-go flats that integrate a patented massaging cushion designed by Reflexology experts, Kushyfoot helps relieve tension and discomfort in achy feet—and stress and fatigue throughout the entire body!***

(https://www.facebook.com/hosiery/info?ref=page_internal)

27. Defendants represent that the "massaging" soles of the Products are influenced by reflexology, a popular form of alternative therapy involving the application of pressure primarily to the feet to treat physical and psychological ailments. A 2009 study (http://www.ncbi.nlm.nih.gov/pubmed/19740047) conducted at the Universities of Exeter and Plymouth in the United Kingdom, however, has concluded that "the best evidence available to date does not demonstrate convincingly that reflexology is an effective treatment for any medical condition."

28. In the "Science of Reflexology" section of the Kushyfoot® website, the Defendants make numerous claims that reflexology has a wide array of health benefits that broadly includes pain relief even though those claims are scientifically and medically unproven. Defendants have created and shared through their website an interactive diagram titled "The Science of Feelin' Good." to illustrate the purported benefits of reflexology on the human body:

Home > Science of Reflexology

## Kushyfoot & the Science of Reflexology

### The Science of Feelin' Good.

When you slip on a pair of Kushyfoot, you'll notice that they make you feel "ahhh"-mazing, from head to toe. That's Reflexology at work. Reflexology is based on the ancient healing principle that everything is connected. By creating socks, hose and sandals that integrate a massaging cushion designed by Reflexology experts, Kushyfoot helps relieve tension and discomfort in achy feet—and stress and fatigue throughout the entire body!

***The Back***

*If that low-back is bringing ya down, the problem likely starts even lower. Kushyfoot eases back pain that actually begins your heels!*



Home > Science of Reflexology

## Kushyfoot & the Science of Reflexology

### The Science of Feelin' Good.

When you slip on a pair of Kushyfoot, you'll notice that they make you feel 'ahhh"-mazing, from head to toe. That's Reflexology at work. Reflexology is based on the ancient healing principle that everything is connected. By creating socks, hose and sandals that integrate a massaging cushion designed by Reflexology experts, Kushyfoot helps relieve tension and discomfort in achy feet—and stress and fatigue throughout the entire body!

***The Brain***

*Life is no trip to the spa, but don't stress! Kushyfoot stands between you and the hard sole of your shoe to give your toes essential cushioning that will relieve mental fatigue.*



Home > Science of Reflexology

## Kushyfoot & the Science of Reflexology

### The Science of Feelin' Good.

When you slip on a pair of Kushyfoot, you'll notice that they make you feel 'ahhh"-mazing, from head to toe. That's Reflexology at work. Reflexology is based on the ancient healing principle that everything is connected. By creating socks, hose and sandals that integrate a massaging cushion designed by Reflexology experts, Kushyfoot helps relieve tension and discomfort in achy feet—and stress and fatigue throughout the entire body!

***The Heart***

*Kushyfoot is easy on the eyes and the heart. Literally. By providing support right in the heart of your foot, Kushyfoot helps supports a healthy heart too!*



Home > Science of Reflexology

## Kushyfoot & the Science of Reflexology

### The Science of Feelin' Good.

When you slip on a pair of Kushyfoot, you'll notice that they make you feel "ahhh"-mazing, from head to toe. That's Reflexology at work. Reflexology is based on the ancient healing principle that everything is connected. By creating socks, hose and sandals that integrate a massaging cushion designed by Reflexology experts, Kushyfoot helps relieve tension and discomfort in achy feet—and stress and fatigue throughout the entire body!

***The Neck***

*It's no accident that the big kink in your neck began in your big ol' toe. Kushyfoot battles fatigue by massaging the big toe and speeding relief to the neck.*




Home > Science of Reflexology

## Kushyfoot & the Science of Reflexology

### The Science of Feelin' Good.

When you slip on a pair of Kushyfoot, you'll notice that they make you feel "ahhh"-mazing, from head to toe. That's Reflexology at work. Reflexology is based on the ancient healing principle that everything is connected. By creating socks, hose and sandals that integrate a massaging cushion designed by Reflexology experts, Kushyfoot helps relieve tension and discomfort in achy feet—and stress and fatigue throughout the entire body!

***The Shoulder***

*Whether you're hoisting babies or barbells, Kushyfoot massages pressure points on the outside ball of your foot that can help ease overworked shoulders.*



Home > Science of Reflexology

## Kushyfoot & the Science of Reflexology

### The Science of Feelin' Good.

When you slip on a pair of Kushyfoot, you'll notice that they make you feel "ahhh"-mazing, from head to toe. That's Reflexology at work. Reflexology is based on the ancient healing principle that everything is connected. By creating socks, hose and sandals that integrate a massaging cushion designed by Reflexology experts, Kushyfoot helps relieve tension and discomfort in achy feet—and stress and fatigue throughout the entire body!

***The Sinuses***

*Take a deep breath, Kushyfoot is here. By massaging the tips of your toes, Kushyfoot soothes the sinuses and helps you to breathe easier.*



In reliance on the Defendants' claims about reflexology and learning about its purported extensive benefits, Defendants and Class members were misled to believe that use of the Products would have material health benefits. The Products not offer any medical benefits or additional tension relief or comfort or feel "'ahhh'-mazing" like "The Science of Feelin' Good." diagram description claims. The "zigzag" and "massaging" soles cannot even be differentiated from regular socks and tights when worn.

29. Defendants represent that their Products' "massaging" soles were created by reflexology experts in order to deceive the consumer into believing that the Products are effective in alleviating a variety of physical and psychological symptoms.

30. Thus, through Defendant's statements regarding the Products and alternative medicine claims conveyed on the Kushyfoot® website, Facebook page and distributor websites, a reasonable consumer is led to conclude that the purported health benefits and tension relief effect of the Products are the result of the ability of the Products' "zigzag" and "massaging" soles

to improve the consumer's physical and mental comfort and reduce fatigue and stress, especially compared to non-Kushyfoot® Products.

31. In truth, the Products do not improve physical comfort because the Kushyfoot® Sheer Knee High Product and Shaping Tights Product feel completely identical to regular hosiery products without “massaging” soles when worn and therefore certainly do not improve physical and mental comfort as advertised by Defendants. Plaintiff WANG excitedly tried out the Products over the course of a week and found that the socks did nothing to alleviate the soreness and fatigue she experiences in her feet and legs throughout the day and that she could not even feel the “zigzag” and “massaging” soles.

32. Another advertising resource on the Kushyfoot® website is a commercial for the Products that has been suggestively named “Super Satisfied” and features an attractive and confident young woman walking through a neighborhood in a dramatic and sultry fashion. As she makes her way through the streets, she moans and utters highly sexually charged phrases to herself, including “That’s the spot” and “So good,” as a song with the lyrics “I feel super satisfied, super satisfied” plays in the background to further the sexual angle of the advertisement. Her assertive stride and relaxed air are literally show-stopping, causing male and female passersby alike to stop in their tracks to look at her with their mouths agape. Towards the end of the commercial, the woman opens her eyes to find herself surrounded by a group of excited women fascinated with knowing her secret to feeling orgasmic on city streets; she eagerly tells them, “Oh, it’s Kushyfoot®,” and distributes their Products from her shopping bags to each of the women. A voiceover then explains, “The Kushyfoot® padded sole massages your feet to relieve tension and fatigue, making your whole body feel refreshed.” The commercial ends with the entire group of women looking blissful and self-possessed crossing the street

together, so the viewer is supposed to assume that they have all put on the Kushyfoot® Products.

Screenshots of the commercial are provided below:









Plaintiff WANG relied on the commercial and believed in the effectiveness and comfort of the Products. To her disappointment, she found that the Purchased Products did not even feel different from her regular socks and tights.

33. There is nothing significant about the Products and their "zigzag" or "massage" soles that differentiates them from non-Kushyfoot® sock, tights and hosiery products. Thus, Defendants' tension relief and massage claims are false, misleading and reasonably likely to deceive the public.

**The Impact of Defendants' Deceptive Conduct**

34. As a result of Defendants' deceptive tension relief and massage claims, consumers – including Plaintiffs and members of the proposed Class – have purchased Products that do not perform as advertised. Moreover, they have paid a price premium for the Products over other socks, tights and hosiery Products sold in the market that do not claim to provide additional massaging comfort. A sample of other socks, tights and hosiery products are provided below:

| BRAND | QUANTITY | PRICE | SELLER |
|---|---|---|---|
| L'eggs Brown Sugar Control Top Knee High Socks | 1 | $4.99 | Amazon |
| Hanes Silk Reflections Women's Knee High Reinforce Toe 2 Pack | 2 | $5.74 | Amazon |
| Lupo Womens Elastacized Sheer Knee High Socks | 1 | $4.99 | Amazon |

| BRAND | QUANTITY | PRICE | SELLER |
|---|---|---|---|
| L'eggs Women's Shaping Tights | 1 | $5.58 | Amazon |
| Hanes Silk Reflections Women's Knee High Reinforce Toe 2 Pack | 2 | $6.50 | Amazon |
| L'eggs Women's Casual Body Shaping Tights | 1 | $5.19 | Amazon |

35. Plaintiffs and members of the proposed Class have been and will continue to be deceived and/or misled by Defendants' deceptive tension relief and massage claims. Plaintiffs and Class members purchased and used the Products during the Class period and in doing so, read and considered the Product labels and packaging (including the representation that the Product "massages feet with every step®") and based their decisions to buy the Products and pay the price premium on those representations. Defendants' tension relief and massage claims were a material factor in influencing Plaintiffs' decisions to purchase and use the Products. Plaintiffs and Class members would not have purchased the premium priced Product had they known that Defendants' tension relief and massage claims were false and misleading. Plaintiffs and the Class members have been damaged in their purchases of the Products and have been deceived into purchasing Products that they believed, based on Defendants' representations, would provide additional comfort and relief through their "massaging" soles, when in fact, the Products do not.

36. Based on the purported tension relief and massage claims conveyed in their marketing and advertising campaign, Defendants are able to price their Products at a premium over other socks, tights and hosiery sold by their competitors. For example, Defendants price the Shaping Tights Product at $29.97 for a pack of three, whereas L'eggs-brand shaping tights are only $6.49 each.

37. Defendants have reaped enormous profits from their false, misleading and deceptive marketing and sale of the Products.

38. Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who have purchased the Products to stop the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the

minds of consumers, and obtain redress for those who have purchased the Products. Plaintiffs allege violations of New York's General Business Law §349, for breach of express warranty, unjust enrichment and violations of consumer protection laws in all states and the District of Columbia.

39. Through this action, Plaintiffs seek injunctive relief, actual damages, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs and all other relief available to the Class as a result of Defendants' unlawful conduct.

## RULE 23 CLASS ALLEGATIONS

## CLASS ACTION ALLEGATIONS

40. Plaintiffs bring this action as a class action pursuant Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Class"):

> All persons or entities in the United States who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. Excluded from the Class are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendants, Defendants' legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

41. Plaintiffs reserve the right to revise the Class definition based on facts learned in the course of litigating this matter.

42. This action is proper for class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are thousands of Class members. Thus, the Class is so numerous that individual joinder of all Class members is impracticable.

43. Questions of law and fact arise from Defendants' conduct described herein. Such questions are common to all Class members and predominate over any questions affecting only individual Class members and include:

a. Whether Defendants' marketing, promotion and advertising of the Product is false, fraudulent, deceptive, unlawful or misleading;

b. Whether the Products actually massage feet and if they did, whether such massaging actions are sufficient to provide the kind of health benefits marketed by Defendants;

c. Whether Defendants have breached warranties made to the consuming public about their Products;

d. Whether Defendants' marketing, promotion, advertising and sale of the Products is and was a deceptive act or practice in the conduct of business directed at consumers, giving rise to a violation of the New York General Business Law § 349 for the New York Subclass;

e. Whether Defendants' marketing, promotion, advertising and sale of the Products is and was a deceptive act or practice in the conduct of business directed at consumers, giving rise to consumer law violations in all other jurisdictions;

f. Whether Plaintiffs and members of the Class sustained injuries or damages as a result of Defendants' false advertising of the Product;

g. Whether Defendants' conduct constitutes unjust enrichment, and whether equity calls for disgorgement of unjustly obtained or retained funds, restitution to, or other remedies for the benefit of the Class;

h. Whether Plaintiffs and members of the Class are entitled to equitable relief and prospective injunctive relief enjoining Defendants from continuing to engage in the fraudulent, deceitful, unlawful and unfair common scheme as alleged in this Complaint; and

i. Whether Defendants' conduct rises to the level of reprehensibility under applicable law such that the imposition of punitive damages is necessary and appropriate to fulfill the societal interest in punishment and deterrence, and the amount of such damages and/or their ratio to the actual or potential harm to the Class.

44. Plaintiffs' claims are typical of those of the Class members because Plaintiffs and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiffs purchased Defendants' Product during the Class Period and sustained similar injuries arising out of Defendants' conduct in violation of New York State law. Defendants' unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Class were caused directly by Defendants' wrongful misconduct. In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

45. Plaintiffs will fairly and adequately represent and pursue the interests of the Class and has retained competent counsel experienced in prosecuting nationwide class actions. Plaintiffs understand the nature of their claims herein, have no disqualifying conditions, and will

vigorously represent the interests of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Class. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

46. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

47. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

48. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

49. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

50. Defendants' conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

### INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

51. Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 50 herein and further alleges as follows:

52. Plaintiffs bring this claim on behalf of themselves and the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349 ("NY GBL § 349").

53. NY GBL § 349 provides that deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are unlawful.

54. Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual

damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

55. The practices employed by Defendants, whereby Defendants advertised, promoted, and marketed that their Product would lead to, at the very least, physical comfort through the "zigzag" and "massaging" soles are unfair, deceptive, and misleading and are in violation of NY GBL § 349.

56. Defendants should be enjoined from marketing their Products as physically causing physical comfort through the "zigzag" and "massaging" soles without further specification as described above pursuant to NY GBL § 349.

57. Plaintiffs, on behalf of themselves and all others similarly situated, respectfully demand a judgment enjoining Defendants' conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

58. Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 57 herein and further alleges as follows:

59. Plaintiffs bring this claim on behalf of themselves and the other members of the Class for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349.

60. Defendants' business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

61. The practices of Defendants described throughout this Complaint were specifically directed to consumers and violate the NY GBL § 349 for, *inter alia*, one or more of the following reasons:

a. Defendants engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the Product, which did, or tended to, mislead Plaintiffs and the Class about facts that could not reasonably be known by them;

b. Defendants failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

c. Defendants caused Plaintiffs and the Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

d. Defendants failed to reveal material facts to Plaintiffs and the Class with the intent that Plaintiffs and the Class members rely upon the omission;

e. Defendants made material representations and statements of fact to Plaintiffs and the Class that resulted in Plaintiffs and the Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

f. Defendants intended that Plaintiffs and the members of the Class rely on its misrepresentations and omissions, so that Plaintiffs and Class members would purchase the Products; and

g. Defendants knowingly and falsely represented and advertised that the Product was fit to be used for the purpose for which it was intended, to provide tension relief and massage, when Defendants knew that the Products did not work as promised.

62. Under all of the circumstances, Defendants' conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

63. Defendants' actions impact the public interest because Plaintiffs and members of the Class were injured in exactly the same way as thousands of others purchasing the Products as a result of and pursuant to Defendants' generalized course of deception.

64. By committing the acts alleged in this Complaint, Defendants have misled Plaintiffs and the Class into purchasing the Products, in part or in whole, due to an erroneous belief that the Products will increase physical and psychological comfort through the addition of the "massaging soles." This is a deceptive business practice that violates NY GBL § 349.

65. Defendants' tension relief and massage claims misled Plaintiffs and are likely in the future to mislead reasonable consumers. Had Plaintiffs and members of the Class known of the true facts about the Products' failure to work as promised, they would not have purchased the Products and/or paid substantially less for another product.

66. The foregoing deceptive acts, omissions and practices were directed at consumers. The foregoing deceptive acts, omissions and practices set forth in connection with Defendants' violations of NY GBL § 349 proximately caused Plaintiffs and other members of the Classes to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Products, and are entitled to recover such damages, together with equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs.

**COUNT III**

**NEGLIGENT MISREPRESENTATION**
**(All States)**

67. Plaintiffs reallege and incorporates herein by reference paragraphs 1 through 66 of this Complaint, as if fully set forth herein.

68. Defendants, directly or through their agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the Class.

69. In making the representations of fact to Plaintiffs and members of the Class described herein, Defendants have failed to fulfill their duties to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendants' negligence and carelessness.

70. Defendants, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendants made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class.

71. Plaintiffs and members of the Class would have acted differently had they not been misled – i.e. they would not have paid money for the Products in the first place.

72. Defendants have a duty to correct the misinformation they disseminated through their advertising of the Products. By not informing Plaintiffs and members of the Class, Defendants breached their duty. Defendants also profited financially as a result of this breach.

73. Plaintiffs and members of the Class relied upon these false representations and nondisclosures by Defendants when purchasing the Products, upon which reliance was justified and reasonably foreseeable.

74. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for Products, and any interest that would have been accrued on all those monies, all in an amount to be determined according to proof at time of trial.

75. Defendants acted with intent to defraud, or with reckless or negligent disregard of the rights of Plaintiffs and members of the Class.

76. Plaintiffs and members of the Class are entitled to punitive damages.

77. Therefore, Plaintiffs pray for relief as set forth below.

## COUNT IV

### COMMON LAW FRAUD
### (All States)

78. Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 77 of this Complaint, as if fully set forth herein.

79. Defendants intentionally made materially false and misleading representations regarding the prizes available from the Products.

80. Plaintiffs and members of the Class were induced by, and relied on, Defendants' false and misleading packaging, representations and omissions and did not know at the time that they were purchasing the Products that.

81. Defendants breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing Products that cause increased physical comfort.

82. Defendants knew or should have known of their false and misleading labeling, packaging and misrepresentations and omissions. Defendants nevertheless continued to promote and encourage customers to purchase the product in a misleading and deceptive manner.

83. Plaintiffs and members of the Class have been injured as a result of Defendants' fraudulent conduct.

84. Defendants are liable to Plaintiffs and members of the Class for damages sustained as a result of Defendants' fraud, in an amount to be determined at trial. As a proximate result of Defendants' breach of warranties, Plaintiffs and Class members have suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for Products that did not conform to what Defendants promised in their promotion, marketing, advertising, packaging and labeling, and they were deprived of the benefit of their bargain and spent money on Products that did not have any value or had less value than warranted or Products that they would not have purchased and used had they known the true facts about them.

**COUNT V**

**UNJUST ENRICHMENT**
**(All States)**

85. Plaintiffs reallege and incorporate herein by reference paragraphs 1 – 84 of this Complaint, as if fully set forth herein.

86. Defendants received certain monies as a result of their uniform deceptive marketing of the Products that are excessive and unreasonable.

87. Plaintiffs and the Class conferred a benefit on Defendants through purchasing the Products, and Defendants have knowledge of this benefit and have voluntarily accepted and retained the benefits conferred on them.

88. Defendants will be unjustly enriched if they are allowed to retain such funds, and each Class member is entitled to an amount equal to the amount they enriched Defendants and for which Defendants have been unjustly enriched.

89. Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiffs, and all others similarly situated, in light of the fact that the benefits of the Products purchased by Plaintiffs and members of the Class, was not what Defendants purported them to be by their labeling and packaging.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated, seek judgment against Defendants, as follows:

a. An Order that this action be maintained as a class action and appointing Plaintiffs as representative of the Class;

b. An Order appointing the undersigned attorney as class counsel in this action;

c. Restitution and disgorgement of all amounts obtained by Defendants as a result of their misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d. All recoverable compensatory and other damages sustained by Plaintiffs and members of the Class;

e. Actual and/or statutory damages for injuries suffered by Plaintiffs and members of the Class and in the maximum amount permitted by applicable law;

f. An order (1) requiring Defendants to immediately cease its wrongful conduct as set forth in this Complaint; (2) enjoining Defendants from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (3) ordering Defendants to engage in a corrective advertising campaign; and (4)

requiring Defendants to reimburse Plaintiffs and all members of the Class the amounts paid for the Product;

g. Statutory pre-judgment and post-judgment interest on any amounts;

h. Payment of reasonable attorneys' fees and costs; and

i. Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: January 12, 2015

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

By: ______________________
C.K. Lee